Clara Shin (Bar No. 214809)
 cshin@cov.com
Nathan Shafroth (Bar No. 232505)
 nshafroth@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

Neema T. Sahni (Bar No. 274240)
 nsahni@cov.com
Rebecca G. Van Tassell (Bar No. 310909)
 rvantassell@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

Attorneys for Defendant
MCKESSON CORPORATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROUND VALLEY INDIAN TRIBES, and ROUND VALLEY INDIAN HEALTH CENTER, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MCKESSON CORPORATION; CARDINAL HEALTH, INC.; AMERISOURCEBERGEN CORPORATION; CVS HEALTH CORPORATION; WALGREENS BOOTS ALLIANCE, INC.; WAL-MART STORES, INC.; PURDUE PHARMA L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; | Civil Case No.: 3:18-cv-2530<br><br>**NOTICE OF REMOVAL** |

| | |
|---|---|
| 1 | JOHNSON & JOHNSON; |
| 2 | JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN |
| 3 | PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; |
| 4 | JANSSEN PHARMACEUTICA INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; ENDO |
| 5 | HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; |
| 6 | ALLERGAN PLC f/k/a ACTAVIS PLC; |
| 7 | WATSON PHARMACEUTICALS, INC. n/k/a ACTAVIS, INC.; |
| 8 | WATSON LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. |
| 9 | f/k/a WATSON PHARMA, INC.; MALLINCKRODT, PLC d/b/a |
| 10 | MALLINCKRODT PHARMACEUTICALS, DOES 1 THROUGH 100, INCLUSIVE, |
| 11 | |
| 12 | Defendants. |

# NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1442 and 1446, Defendant McKesson Corporation ("McKesson") hereby gives timely notice of the removal of this matter from the Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California.

# INTRODUCTION

1. On March 2, 2018, Plaintiff Round Valley Indian Tribes (the "Tribe"), and Round Valley Indian Health Center, Inc. ("Round Valley") (collectively, the "Plaintiffs") filed a Complaint in the Superior Court of the State of California for the County of San Francisco, against McKesson and several other named Defendants, including pharmaceutical distributors, pharmaceutical manufacturers, and pharmacies. A true and correct copy of the Complaint, assigned Case No. CGC-18-564741,[1] is attached as **Exhibit 1.**

2. Service of the Plaintiffs' Complaint was effective as to McKesson on April 2, 2018, when McKesson's counsel returned a Notice and Acknowledgement of Receipt to the Plaintiffs' counsel. A true and correct copy of that Notice and Acknowledgement of Receipt is attached hereto as **Exhibit 2.**

3. The Plaintiffs allege that McKesson, as a distributor of prescription medications, is liable under California law for harms to the Plaintiffs purportedly caused by the alleged diversion of prescription opioid medications into the secondary market in and around the "economic proximity of the Tribe and the area served by Round Valley," Compl. ¶ 143, and by McKesson's allegedly insufficient diversion controls, *see id.* ¶¶ 143-157. According to the Complaint, the diversion of pharmaceuticals from McKesson's legitimate supply chains writ large allowed "opioids to fall into the hands of children, addicts, criminals, and other unintended users." Compl. ¶ 149. In making this allegation, the Plaintiffs do not focus on any particular customers of McKesson, or make any distinctions between customers that

---

[1] Counsel for the Plaintiffs filed 10 other substantially similar lawsuits in San Francisco Superior Court on behalf of several other Indian Tribes and related health care organizations, and designated all 11 cases as related in the Superior Court. McKesson will concurrently file Notices of Removal in each of those cases, and in accordance with the Local Rules, will promptly file an Administrative Motion to Consider Whether Cases Should Be Related.

are privately-operated pharmacies or, as relevant here, customers that are agencies of the federal government.

4.     McKesson removes this action under 28 U.S.C. § 1442(a)(1).  As set forth more fully below, the Complaint's allegations against McKesson relate to and necessarily implicate McKesson's distribution of pharmaceuticals to the U.S. Department of Veterans Affairs, the Indian Health Service, and the facilities of ten other federal agencies and organizations.  McKesson distributes pharmaceuticals, including opioids, to these customers at the direction of the federal government under an exclusive contract.

## I.     THIS CASE IS REMOVABLE UNDER FEDERAL OFFICER REMOVAL.

5.     The federal officer removal statute authorizes "any person acting under" a federal officer to remove to federal court a civil action "for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).

6.     Federal officer removal requires a defendant to demonstrate that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citing *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999)).

7.     "[T]he Supreme Court has mandated a generous interpretation of the federal officer removal statute ever since [its enactment]: 'It scarcely need be said that such measures are to be liberally construed . . . .'" *Id.* at 1252 (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).  "The Supreme Court 'has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Id.* (citing *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)).  The Ninth Circuit has therefore taken "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.*

### A.     McKesson Is a "Person Acting Under" a Federal Officer.

8.     The federal officer removal statute applies to private parties "'who lawfully assist' the federal officer 'in the performance of his official duty.'"  *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)).  It is well-established that government contractors who are involved in "an effort to assist, or help carry out, the duties or tasks of the federal superior" are "acting under" a federal officer.  *Id.* at 147.

9.     Because the Plaintiffs' Complaint alleges diversion of pharmaceuticals from McKesson's legitimate supply chains writ large, without limiting the allegations to non-governmental customers, the Plaintiffs' allegations encompass and necessarily implicate pharmaceuticals distributed by McKesson pursuant to its responsibilities as a government contractor.  Specifically, McKesson entered into and is bound by an exclusive federal government contract called the Pharmaceutical Prime Vendor Contract ("PPV Contract").[2]  Under that contract, McKesson is the primary distributor of prescription medications to the Indian Health Service, the Department of Veterans Affairs, and facilities for ten other federal organizations.[3]  By the terms of the PPV Contract, McKesson supplied and continues to supply prescription medications, including opioids, to the Indian Health Service, the Department of Veterans Affairs, and other federal customers nationwide, including to the geographic area that is allegedly in the "economic proximity" of the Tribe and allegedly "served by" Round Valley.  *See* Comp. ¶¶ 143, 146.

10.     The PPV Contract is governed by federal law and regulation, and is overseen by a federal contracting officer.  Under the terms of the PPV Contract, McKesson must process and fill all orders that it receives from authorized government purchasers.  PPV Contract § I-9(b).  The PPV Contract provides for prompt, typically next-day, delivery of all orders.  *Id.* § I-9(l).  Moreover, the PPV Contract

---

[2] PPV Contract, *available at* https://www.va.gov/oal/docs/business/nac/ppvContractVA797P-12-D-0001option2.pdf.

[3] The other federal organizations that are participants in the PPV Contract are the State Veterans Homes, the Department of Health and Human Services, the Immigration Health Service Corps, the Department of Homeland Security, the Bureau of Prisons, Howard University, the Public Health Service (Saipan, Commonwealth of Northern Mariana Island), Federal Health Care Centers, the Peace Corps, and the VA Commercial Repackaging Center.  *Id.* at p. 2.

does not grant McKesson discretion to deny orders based on potential diversion; rather, it must coordinate shipment decisions through the federal contracting officer. *Id.* § AS3023, Diversion of Pharmaceutical Products (Sept. 2010) (stating that the Contractor "may not unreasonably delay filling an FSS [Federal Supply Schedule] order, pending its investigation of the intended use of the items ordered," and if the "Contractor refuses to fill an FSS order because of an expectation that some or all of the orders will be diverted . . . Contractor must notify the Schedule contracting officer (CO) of its decision within 48 hours and state the basis for the refusal," and the facility then has an "opportunity to present its position on the claimed abuse."). The 104-page PPV Contract contains a number of other provisions demonstrating that the federal government has engaged McKesson to "assist" the government with "carry[ing]" out the government's activities of distributing pharmaceuticals to its health care facilities. *See Watson*, 551 U.S. at 147 (holding that the federal officer removal statute applies to private parties who "assist" the government in the performance of official duties). For example, the government is responsible for accepting delivery of orders, including overseeing security for this portion of the transaction. PPV Contract § I-18(i) (providing that "[t]he Government will witness products received at the loading dock (or specified delivery location) and sign delivery receipt documents before the PPV driver [*i.e.*, McKesson] departs."). In other words, the government retains substantial day-to-day oversight and supervision over the distribution of a meaningful portion of McKesson's supply chain.[4]

11. Because the Plaintiffs seek recovery for harms caused by any and all prescription opioids that were allegedly diverted from the legitimate supply chain in and around the economic proximity of the Tribe and the area served by Round Valley, without regard to whether or not the customer at the end of that chain was the Indian Health Service, the Department of Veterans Affairs, or another federal agency, its claims necessarily encompass the prescription opioids that McKesson supplied to tribal and federal facilities through the PPV Contract.

---

[4] According to the Department of Veterans Affairs website, the PPV Contract is "the largest contract within the [Department of Veterans Affairs] National Acquisition Center (averaging $4 billion in annual sales)." *Available at* https://www.va.gov/oal/business/nc/ppv.asp.

**B.      McKesson Was Sued "for or Relating to An[] Act Under Color of Such Office."**

12.     To satisfy the requirement that the suit be "relating to an[] act under color of" federal office, a defendant "must show a nexus, a 'causal connection' between the charged conduct and asserted official authority." *Jefferson Cty.*, 527 U.S. at 431 (citing *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)).  The "hurdle erected by [the causal-connection] requirement is quite low." *Gonclaves By and Through Gonclaves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (citing *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008)).  *See also Maryland v. Soper*, 270 U.S. 9, 33 (1926) ("[T]he statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority.  It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution.").

13.     The Plaintiffs allege a "causal nexus" between *all* of McKesson's distribution activity in and around the economic proximity of the Tribe and the Tribe's alleged injuries, and between *all* of McKesson's distribution activity in and around the area served by Round Valley and Round Valley's alleged injuries.  Plaintiffs allege this causal connection regardless of whether McKesson's customers are private pharmacies or federal facilities.  According to the Plaintiffs, their injuries were proximately caused by McKesson's "pattern of distributing commonly abused and diverted opioids in geographic areas—and in such quantities, and with such frequency—that they knew or should have known these commonly abused controlled substances were not being prescribed and consumed for legitimate medical purposes."  Comp. ¶ 153.  As explained above, the quantities and frequency of the prescription opioids distributed by McKesson in the Tribe's economic proximity and Round Valley's service area were at least partially controlled by the terms of the PPV Contract.  The Plaintiffs' allegations are thus based at least in part on conduct that McKesson performed pursuant to its obligations to supply prescription pharmaceuticals under that federal government contract.

**C.      McKesson Has Colorable Federal Defenses.**

14.     In construing the colorable federal defense requirement, the Supreme Court has "rejected a narrow, grudging interpretation of the statute," and "does not require the officer virtually to win his case before he can have it removed." *Jefferson Cty.*, 527 U.S. at 431 (1999).

5
NOTICE OF REMOVAL

15. McKesson has a colorable federal defense in the form of the government contractor defense, which "protects government contractors from tort liability that arises as a result of the contractor's compli[ance] with the specifications of a federal government contract." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008)) (alteration in original). *See also Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).

16. McKesson also has a defense that the Plaintiffs lack standing to pursue their claims, which effectively attempt to challenge McKesson's compliance with the federal Controlled Substances Act, 21 U.S.C. § 903 ("CSA") and its implementing regulations. The Complaint seeks to hold McKesson liable at least in part for its alleged failure to halt shipments of suspicious orders. Compl. ¶ 191. Such a duty exists only under the federal CSA and related DEA regulations, which are interpreted to require that distributors either investigate or decline to ship a suspicious order. *Masters Pharm., Inc. v. Drug Enforcement Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017). The Plaintiffs, therefore, effectively attempt to challenge McKesson's compliance with the CSA and its implementing regulations, but lacks standing to pursue this claim. The CSA does not create a private right of action and thus can be enforced only by federal authorities, not the Plaintiffs. *Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010); *United States v. Real Prop. and Improvs. Located at 1840 Embarcadero, Oakland, Cal.*, 932 F. Supp. 2d 1064, 1072 (N.D. Cal. 2013).

17. Finally, McKesson also has a colorable federal preemption defense, to the extent that the Plaintiffs' claims conflict with McKesson's duties under the CSA and its implementing regulations. For example, the Complaint alleges that McKesson's activities, including those controlled by the CSA, do not conform to "the legal standard of reasonable conduct under the circumstances." Compl. ¶ 208. In the heavily-regulated pharmaceutical distribution industry, federal statutes and regulations provide the legal standard and control what constitutes "reasonable conduct" under most relevant circumstances. To the extent the Plaintiffs' theory concerning what conduct is "reasonable" is inconsistent with the standard set forth by the CSA, the Plaintiffs' claims are preempted.

**II.     ALL PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED.**

18.     This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(2) and (3); it is filed within 30 days of effective service of the Complaint on McKesson, which occurred on April 2, 2018. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 334, 347-48 (1999) (holding that the 30-day removal period begins to run upon formal service of the complaint).

19.     A true and correct copy of the process, pleadings, orders, and other documents filed or served on McKesson, along with a copy of the docket sheet, are attached within **Exhibit 1.** No substantive motions are currently pending in the state court action.

20.     Written notice of the filing of this Notice of Removal shall be promptly served on all parties herein, and a copy of this Notice shall promptly be filed with the clerk in the state court action pursuant to 28 U.S.C. § 1446(d).

21.     Federal officer removal does not require all defendants to join in the removal. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("Whereas all defendants must consent to removal under section 1441 . . . a federal officer or agency defendant can unilaterally remove a case under section 1442.").

22.     McKesson reserves all defenses, including but not limited to those under Federal Rule of Civil Procedure 12(b), and does not waive said defenses by filing this Notice.

WHEREFORE, McKesson gives notice that the above action now pending against it in the Superior Court of the State of California for the County of San Francisco, Case No. CGC-18-564741, is hereby removed from the above-referenced state court to the United States District Court for the Northern District of California.

DATED:  April 27, 2018                                                          COVINGTON & BURLING LLP

                                                                                             By:     /s/ Clara Shin
                                                                                                        Clara Shin
                                                                                                        Attorneys for Defendant
                                                                                                        McKesson Corporation